UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

STEPHEN NIVENS,

   Plaintiff,

v.

MARYLAND PAROLE COMMISSION,
DEPARTMENT OF PUBLIC SAFETY AND
CORRECTIONAL SERVICES,
DAYENA M. CORCORAN, *Commissioner*,
RUSSELL A. NEVERDON, SR.,
*Director of IGO*,
RICHARD DOVEY, *Warden*,
DAVID R. BLUMBERG,
*Parole Commissioner*, and
BALTIMORE COUNTY DETENTION
CENTER,

   Defendants.

Civil Action No. TDC-20-2660

**MEMORANDUM OPINION**

Self-represented Plaintiff Steven Nivens, currently incarcerated at the Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland, has filed this civil action pursuant to 42 U.S.C. § 1983 against Defendants the Maryland Parole Commission, the Maryland Department of Public Safety and Correctional Services ("DPSCS"), Commissioner Dayena M. Corcoran, MCTC Warden Richard Dovey, Inmate Grievance Office Director Russell A. Neverdon, Sr., Parole Commissioner David R. Blumberg, and the Baltimore County Detention Center ("BCDC"). In his Amended Complaint, Nivens asserts that he has been subjected to cruel and unusual punishment, and denied equal protection and due process of law, as a result of Defendants'

handling of the COVID-19 pandemic at MCTC. He separately alleges constitutional violations associated with a Maryland parole hearing conducted in December 2020.

Defendants DPSCS, Corcoran, Dovey, and Blumberg have filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. Nivens has filed several briefs and supplemental materials opposing the Motion, ECF Nos. 25, 28, 29, 31, so the Motion is fully briefed. Nivens has also filed a "Motion for Defense for Lack of Subject Matter Authority and Jurisdiction of the Secretary and DPSCS," ECF No. 33, and two Motions for "Emergency Injunction for Prospective Relief for Issuance of Writ of Mandamus," ECF Nos. 34, 42, seeking a writ of mandamus to exempt him from the DPSCS policy that requires inmates to be vaccinated against COVID-19. Nivens has also filed a Motion for Leave to Amend, ECF Nos. 20, 21. Having reviewed the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion will be GRANTED, and Nivens's Motions will be DENIED. Furthermore, although BCDC and Neverdon have not been served with the Complaint, Nivens's claims against them will also be DISMISSED pursuant to 28 U.S.C. § 1915A.

## BACKGROUND

### I. COVID-19

In the operative Amended Complaint, Nivens primarily alleges that DPSCS personnel failed to establish proper policies to ensure prisoners' safety from COVID-19. He states that face shields and masks were not provided to staff until April 5, 2020, that social distancing directives were not issued until April 10, 2020, and that there was no social distancing in group yard activities or the dining hall until the second week of April 2020. According to Nivens, the inmate population received masks on April 20, 2020, but social distancing was not possible in the cells, as a directive for inmates to sleep "head to toe" was not sufficient to keep individuals six feet apart in cells. Am.

2

Compl. at 16, ECF No. 6. Nivens also claims that COVID-19 testing was not conducted until June 15, 2020, "in an effort to keep the information of the exposure itself to be of minimal public knowledge." *Id.* Then, he alleges, once testing was implemented, individuals were not properly quarantined pending their test results or after testing positive. For example, a correctional officer who tested positive for COVID-19 on November 23, 2020 was allowed to continue working at the prison commissary for one week before being removed from the facility.

Nivens further claims that the facility was not properly sanitized, as staff provided only a single "bleach spray bottle to the housing area for use 'on the phones only.'" *Id.* at 22. He states that after three inmates died from COVID-19 in January 2021, no efforts were taken to sanitize or seal their cells to keep them from contaminating the rest of the facility. Nivens claims that his health was in danger "due to his weakened immune system from his underlying health condition (hypothyroidism)." *Id.* at 3. He believes that the procedures implemented at MCTC were not consistent with the Centers for Disease Control and Prevention or World Health Organization guidelines, and he asserts that releasing additional prisoners would assist in satisfying those guidelines.

## II.     Parole Hearing

Separately, Nivens asserts that he had a parole hearing on December 29, 2020 at which two parole commissioners informed him that he could request another hearing after two years. However, after the hearing was conducted, they informed him that he would not be eligible for another hearing until December 2030. Nivens asserts that this discrepancy is unconstitutional. He also alleges that the commissioners initially stated that they would not allow Nivens's victim to testify but eventually received her testimony at the parole hearing, which he claims is a violation of the Ex Post Facto Clause of the United States Constitution and various parole statutes.

### III. Administrative Remedy Procedure

Nivens asserts that he sought relief through the Administrative Remedy Procedure but acknowledges that he had "yet to receive a response." *Id.* at 18. He asserts that he should be excused from "complete exhaustion of the ARP procedure given the state of the growing pandemic within this State." *Id.*

## DISCUSSION

### I. Motion to Dismiss or, in the Alternative, for Summary Judgment

In their Motion, Defendants primarily argue that Nivens's claims should be dismissed because Nivens did not exhaust administrative remedies. According to Defendants, Nivens did not file an Administrative Remedy Procedure complaint regarding his identified concerns about the handling of the COVID-19 pandemic, and he did not file a grievance with the Inmate Grievance Office ("IGO"). As to the parole hearing, Defendants argue that there was no constitutional violation associated with it, including in the receipt of victim testimony, and assert that "[s]ince its creation, the Parole Commission has considered all available information concerning the impact of the crime on the victim or victims when deciding whether to parole an inmate." Blumberg Decl. ¶ 4, Mot. Ex. 4, ECF No. 22-5.

#### A. Legal Standards

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual

4

allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants have attached several exhibits to their Motion. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Nivens

has not asserted that he needs discovery in order to address the Motion. The Court will thus construe Defendants' Motion as a motion for summary judgment for purposes of the arguments requiring consideration of the submitted declarations and exhibits.

Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

### B.  Exhaustion of Administrative Remedies

Defendants assert that Nivens's claims regarding COVID-19 should be dismissed because he has failed to exhaust administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2018). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable: when officers are "unable or consistently unwilling to provide any relief to aggrieved inmates," when the procedure is "so opaque that it becomes, practically speaking, incapable of use," or when "prison administrators thwart inmates from taking advantage of [filing grievances] through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

In Maryland prisons, for the type of grievance asserted by Nivens, the Administrative Remedy Procedure is the administrative process that must be exhausted. Md. Code Regs. § 12.02.28.02(B)(1), (D) (2018). First, a prisoner must file an ARP complaint ("ARP") with the warden within 30 days of the incident at issue. Md. Code Regs. § 12.02.28.05(D)(1) (requiring filing with the "managing official"); Md. Code Regs. § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); Md. Code Regs. § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. Md. Code Regs. § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the IGO. *See* Md. Code. Ann., Corr. Servs.

§§ 10-206, 10-210 (LexisNexis 2017); Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in the appropriate Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

In response, Nivens claims that he filed an ARP on March 20, 2020 regarding COVID-19 exposure, but he did not receive a receipt or a response. However, Defendants have submitted a declaration from an MCTC official attesting that there is no record that Nivens filed such an ARP. Hull Decl. ¶ 3, Mot. Dismiss Ex. 1, ECF No. 22-2. Even if he had done so, Defendants have also submitted a declaration from the Director of the IGO attesting that there is no record that Nivens appealed any ARP to the IGO, or otherwise filed a grievance with the IGO, as would be necessary to exhaust administrative remedies. Taylor Decl. ¶ 3, Mot. Dismiss Ex. 2, ECF No. 22-3. Indeed, in the Amended Complaint, Nivens specifically acknowledges that he filed this action prior to receiving a response to an ARP. Although he argues that he should not have been required to exhaust the ARP process in light of the COVID-19 pandemic, Nivens has not shown that officers were unable or unwilling to receive ARPs and provide relief, that the ARP procedure was incapable of use at that time, or that prison administrators prevented him from filing a grievance. *See Ross*, 578 U.S. at 643–44. The fact that he was able to file his Complaint in this action establishes that there was no limitation that prevented the filing of an ARP. Because the PLRA requires inmates to pursue and exhaust all available administrative remedies before filing suit, and Nivens has failed to do so, his claims must be dismissed without prejudice. *See* 42 U.S.C. § 1997e(a).

C.  **Parole Hearing**

Construed liberally, Nivens's claims relating to his parole hearing raise due process claims. The Fourteenth Amendment guarantees that states may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To maintain a due process claim,

8

the claimant must first establish the existence of a protected property or liberty interest. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). If a protected property or liberty interest is identified, "the question remains what process is due." *Id.*

In Maryland, the relevant statutes and regulations "do[] not create a legitimate expectation of parole release," so inmates have "no right protected by the due process clause" associated with the parole process. *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988); *see also Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7-8 (1979) (holding that there is no constitutionally guaranteed liberty interest in parole). In Maryland, a liberty interest in parole arises only after the inmate is served with an Order of Parole. *Patuxent Inst. Bd. of Review v. Hancock*, 620 A.2d 917, 931 (Md. 1993). Here, Nivens does not allege that an Order of Parole was issued to him. Accordingly, he has failed to establish a liberty interest for which process was due and cannot assert a due process violation. *See Henderson v. Simms*, 223 F.3d 267, 275 (4th Cir. 2000) (noting that "[w]ith no liberty interest to protect, there is no violation of due process").

Nivens also argues that his parole hearing violates the Ex Post Facto Clause, perhaps because it was an open parole hearing pursuant to a more recent change in the law. The Ex Post Facto Clause prohibits the retroactive altering of the definition of a crime or increase in the punishment for a criminal act. *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). Although a change in the formula for calculating a sentencing range could violate *ex post facto* principles, a change in the method to be followed in fixing a parole release date, such as a change in the timing of when another parole hearing needs to be held, does not violate the Ex Post Facto Clause. *See California v. Morales*, 514 U.S. 499, 507-08 (1995). Ordinarily, changes to process, such as a change to the duration of a parole hearing or new restrictions on the amount of time for a prisoner to speak at a hearing, do not implicate the Ex Post Facto Clause even if they present some "attenuated risk of

affecting a prisoner's actual term of confinement by making it more difficult for him to make a persuasive case for early release." *Id.* at 508-09. Here, the open parole hearing and permitting the testimony of the victim fall into the same category of procedural changes that do not support a claim under the Ex Post Facto Clause. Accordingly, the Defendants' Motion will be granted as to the claim relating to the parole hearing.

## II. Unserved Defendants

As to Defendants BCDC and Neverdon, who have not been served and are not parties to Defendants' Motion, because Nivens's claims fail for the reason stated above, and the theory of liability for these unserved Defendants does not differ in any material way, the Court will dismiss the claims against them as well. *See* 28 U.S.C. § 1915(e)(2), 1915A(b) (2018) (requiring a court to screen a complaint filed by a prisoner against government officials or filed *in forma pauperis* and dismiss it if it fails to state a plausible claim for relief). The Court further notes that Nivens has not alleged any facts about Neverdon that would support a plausible claim of a constitutional or other violation. *See Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (stating that under § 1983, a plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights" to establish personal liability).

## III. Motions for a Writ of Mandamus

Nivens has, in three separate filings, requested a writ of mandamus to prevent Defendants from "forcing" Nivens to receive the COVID-19 vaccine because of a religious exemption. Motion for Defense for Lack of Subject Matter Authority at 2–3, ECF No. 33; Mot. for Emergency Injunction at 2, ECF No. 34; Second Mot. for Emergency Injunction at 2–3, ECF No. 42.

United States district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform

a duty owed to the plaintiff." 28 U.S.C. § 1361. This Court, however, has no mandamus jurisdiction over state employees such as Defendants in this case. *See Gurley v. Superior Court of Mecklenburg County*, 411 F.2d 586, 587 (4th Cir. 1969). In addition, a writ of mandamus is a "drastic remedy to be used only in extraordinary situations" where there are no other means by which the relief sought could be granted." *In re Beard*, 811 F.2d 818, 826 (4th Cir. 1987). Thus, Nivens's requests for mandamus relief will be denied.

## IV.   Motion for Leave to Amend

After filing the Amended Complaint, Nivens filed a Motion for Leave to Amend in which he appears to seek to file a Second Amended Complaint. ECF Nos. 20, 21. It is unclear whether this filing was intended to seek amendment of the Amended Complaint in this case or to initiate a new civil action. Either way, the claims asserted cannot succeed. The proposed Second Amended Complaint, while referencing COVID-19, focuses on alleged constitutional violations during the investigation and prosecution underlying Nivens's present conviction. Because the named defendants, Robert E. Cahill, Jr. and Michael J. Finifter, are state court judges, his claims fail under the doctrine of judicial immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (emphasizing that it is "well settled" that judges have absolute immunity from suit for acts they take in the exercise of their judicial functions); *Forrester v. White*, 484 U.S. 219, 226–27 (1988) ("If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits."). Moreover, under *Heck v. Humphrey*, 512 U.S. 477 (1994), because success on these claims would necessarily undermine the validity of his conviction, his claims cannot succeed unless his conviction is first vacated. *Id.* at 487. However, Nivens specifically acknowledges in the proposed Second Amended Complaint that he "is NOT SEEKING to

11

challenge the validity of the criminal judgment or the legality of his conviction." 2d Am. Compl. at 1, ECF No. 20. Thus, his claims necessarily fail. Accordingly, the Court will deny the Motion for Leave to Amend because the amendment would be futile. *See* Fed. R. Civ. P. 15(a)(2); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) ("[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)). If the filing is viewed as advancing a new civil action, the Court will dismiss it for failure to state a claim. *See* 28 U.S.C. § 1915A(b).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment will be GRANTED, and the claims against the unserved Defendants, BCDC and Neverdon, will be dismissed. Nivens's Motions will be denied. A separate Order shall issue.

Date: August 19, 2022

THEODORE D. CHUANG
United States District Judge